UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALLEY JOIST, LLC<br><br>    Plaintiff,<br><br>v.<br><br>OEG BUILDING MATERIALS, INC.<br><br>    Defendants. | DOCKET NO.<br><br>CIVIL ACTION<br><br>**COMPLAINT and<br>JURY DEMAND** |

Plaintiff, Valley Joist, LLC, through undersigned counsel, hereby files this Complaint against Defendant, OEG Building Materials, Inc., and in support thereof avers as follows:

## PARTIES

1.   Plaintiff, Valley Joist, LLC ("Valley"), is a Delaware limited liability company comprised of a single member, Valley Joist BD Holdings, LLC, a Delaware limited liability company whose sole member is BDCM Opportunity Fund IV, L.P. BDCM Opportunity Fund IV, L.P. is a Delaware company whose general partner is BDCM Opportunity Fund IV GP, L.L.C., a Cayman Islands entity, none of whose members are citizens of New Jersey or New York. Accordingly, Plaintiff, and all of its members, are citizens of a state other than New Jersey or New York, and therefore completely diverse from Defendant.

2.   Upon information and belief, Defendant, OEG Building Materials, Inc., is a New York corporation with its principal place of business at 6001 Bordentown Avenue, Sayreville, New Jersey 08872.

{N4474881.1}

**JURISDICTION AND VENUE**

3. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and this case is between citizens of different states.

4. Specifically, the Defendant corporation is a citizen of the States of New York and New Jersey. Plaintiff and all members of the Plaintiff limited liability company are citizens of the State of Delaware or states other than New Jersey or New York. Accordingly, complete diversity of citizenship exists in this case.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

**MATERIAL FACTS COMMON TO ALL CLAIMS**

6. In early 2021, Valley placed two, independent purchase orders for steel and related materials ("steel materials") with OEG, which OEG confirmed and accepted. Each of these orders relate to jobs for which Valley was contracted by its customers to supply steel products for ongoing projects, with firm commitment dates and delivery deadlines, of which OEG was, at all times, aware. This Complaint asserts causes of action against OEG based on its breach of both purchase orders with Valley and related bad faith conduct.

**WATERFRONT PURCHASE ORDER**

7. Valley's customer, Szoke Brothers, Inc. ("Szoke"), placed an order with Valley to provide certain steel deck materials and related scopes of work for a project known as the Waterfront Project located at 615 Waterfront Drive, Allentown, Pennsylvania ("Waterfront Project").

8. Valley, in turn, contacted OEG to provide steel materials needed for Valley's scope of work on the Waterfront Project. On January 7, 2021, OEG sent Valley a quote for the steel material units.

9. On January 22, 2021, Valley sent OEG a correspondence clarifying that delivery of the steel decking and steel materials on the Waterfront Project was anticipated to begin and would be needed mid-June 2021. Through prior courses of dealing, and in particular in connection with the subject purchase orders, OEG was aware of the commitments Valley was making ot its customers and the need for timely delivery, failing which Valley would be subject to claims of breach of tis contract with its customers and damages.

10. On January 29, 2021, Valley contacted OEG to inform that Valley's customer had officially been awarded the Project and Valley issued a purchase order to OEG based on the steel material units quoted by OEG on January 7, 2021. OEG responded to Valley confirming the purchase order and stating that OEG was good to proceed.

11. On January 29, 2021, Valley issued a Purchase Order ("Waterfront Purchase Order") to OEG for the purpose of obtaining the steel materials from OEG for the Waterfront Project. The Waterfront Purchase Order was based on OEG's previous quote for the steel material units and freight, totaling a sum of $179,338.45, and included Valley's standard terms and conditions.

12. Pursuant to the Waterfront Purchase Order, Valley issued a Bill of Materials to OEG for the steel materials required to fabricate and construct the steel deck on the Waterfront Project. The Bill of Materials detailed the schedule and sequences for the steel deck fabrication and construction on the Waterfront Project and stated delivery of the steel decking and steel materials was scheduled to begin the week of June 14, 2021.

13. OEG then notified Valley that the Purchase Order, dated January 29, 2021, would expire before the June 2021 delivery date and indicated that OEG would need to "reprice" the steel materials for a June 2021 delivery.

14. Valley then offered to take an earlier delivery of the steel materials from OEG. In response, OEG stated that an earlier delivery of the steel materials would not be possible and that Valley would need to pay additional costs in the amount of $159,626.00 for delivery of the steel materials previously confirmed by the purchase order.

15. The Waterfront Purchase Order contained the agreed price and delivery time frame for the steel materials, and OEG received notice prior to accepting the Waterfront Purchase Order in January 2021 that delivery of the steel materials would be needed on the Waterfront Project in June 2021. Yet when pressed with a delivery time frame, OEG informed Valley that "additional charges" would be necessary to ensure delivery of the steel materials, thereby unilaterally issuing a new contract price due to market conditions that Valley had to accept in order for Valley to timely receive the steel materials and meet its own deadlines with its customer.

16. In order to ensure Valley met the schedules and deadlines of its customer, Valley agreed to pay the additional costs for a timely delivery of the steel materials. OEG then notified Valley that its estimated delivery time fell between the end of July and the beginning of August 2021, instead of the original delivery time in mid-June 2021 as expressed and expected by Valley and Valley's customer.

17. By August 2021, OEG had still failed to supply the steel materials as contracted, or provide any expected delivery date, and refused to offer any firm or specific information on when it intended to deliver the order of materials, if at all.

18. As a result of OEG's failure to timely deliver the steel materials, as well as its failure to ever commit to a firm delivery date, Valley's customer, Szoke, cancelled its order of the steel materials to be provided by OEG through its contract with Valley. The cancellation by Szoke was a foreseeable consequence of OEG's failure to timely deliver.

19. Szoke proceeded with replacing the order for steel materials to be supplied by Valley, and has placed Valley in default of its contract with Szoke. In doing so, Szoke incurred additional costs of $423,950.18, inclusive of tax, over and above the price that Valley Joist had originally agreed to provide the steel materials based on OEG's quote. Szoke is seeking recovery of these additional expenses from Valley, which Valley, in turn, seeks as damages from OEG for breach of contract.

## ATLANTICARE PURCHASE ORDER

20. On a separate project, Valley's customer, Schlosser Steel, placed an order with Valley to provide certain steel deck materials and related scopes of work for a project known as the Atlanticare Medical Building in Atlantic City, New Jersey ("Atlanticare Project").

21. Valley, in turn, contacted OEG to provide steel materials needed for Valley's scope of work on the Atlanticare Project. On January 4, 2021, OEG sent Valley a quote for the steel material units, which was accepted by Valley.

22. On January 15, 2021, Valley issued Purchase Order, No. 0A02873, ("Atlanticare Purchase Order") to OEG for the purpose of obtaining the steel materials from OEG for the Atlanticare Project. The Atlanticare Purchase Order was based on OEG's previous quote for the steel material units and freight, totaling a sum of $56,887.00.

23. Valley also issued a Bill of Materials to OEG for the steel materials required to fabricate and construct the steel deck on the Atlanticare Project, with a stated delivery date for the steel decking and steel materials on July 19, 2021.

24. OEG later responded to Valley by informing that a July 2021 delivery would not be possible and, similar to the Waterfront Project, sought to charge Valley additional costs in the amount of $98,400.00 to deliver the steel materials within an estimated time frame in September or October 2021. These additional costs were nothing more than OEG taking advantage of the sudden changes in the steel market.

25. In sum, the Atlanticare Purchase Order contained the agreed price and delivery time frame for the steel materials, and OEG received notice that delivery of the steel materials would be needed on the Atlanticare Project in July 2021. Yet when pressed with a delivery time, OEG again attempted to unilaterally increase the agreed contract price for delivery of the steel materials and provided a delivery window far beyond the Purchase Order's timeframe.

26. Ultimately, OEG failed to supply the steel materials as contracted, and refused to provide any firm delivery date. In fact, Valley believes that OEG selectively "cancelled" the Valley orders and had no intention of ever filling such orders in preference to OEG's preferred customers, despite OEG's purported renegotiation of the purchase orders.

27. As a result of OEG's failure to supply the steel materials, Valley was unable to meet the schedule and deadlines on the Atlanticare Project and was forced to cancel its contract with its customer, Schlosser Steel. Valley's customer was forced to purchase the material from another company who was able to commit to the required delivery schedule. The cancellation by Schlosser was a foreseeable consequence of OEG's failure to timely deliver.

28.     Due to Valley's inability to timely supply the steel materials due to OEG's breach, Valley was also forced to issue credits and payments to its customer for the costs incurred to replace the order for steel materials, which credits and payments amount to approximately $220,000.00.

29.     OEG also supplied galvanized roof decking materials on an unrelated job known as the Nestlé Project, for which Valley has paid for all materials provided.

30.     The galvanized roof deck provided by OEG for the Nestle Project exhibited oxidation and rust staining.  Valley's customer on the Nestlé Project required Valley to remedy the unsatisfactory rusting and oxidation.

31.     Pursuant to its contractual obligations on the Nestlé Project, OEG was to provide acceptable materials free from rust staining and oxidation, yet the materials delivered contained defects and were not in good order and condition.

32.      Valley has expended sums to remedy the defective materials provided by OEG for the Nestlé Project,

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

33.     Valley incorporates by reference the allegations set forth in Paragraphs 1 through 32.

34.     The Waterfront Purchase Order and the Atlanticare Purchase Order (collectively, the "Purchase Orders") are valid, binding, and enforceable agreements between the parties for OEG to timely supply steel materials to Valley, and, at the least, for OEG to make good faith efforts to fulfill its contractual promises.

35.     The Terms and Conditions of the Purchase Orders expressly state that "[t]ime is of the essence" for the order of materials. Further, the Terms and Conditions of the Purchase Orders

provide Valley the right to bring a claim for breach of contract and to terminate the order if OEG fails to comply with the terms of the Purchase Orders.

36. Valley fully performed and satisfied all of its obligations under the Purchase Orders and all other conditions precedent prior to filing suit, excluding those obligations for which Valley's performance was excused.

37. Despite OEG's agreement to comply with the terms of the Purchase Orders, OEG ultimately refused to supply the steel materials as contracted and continuously refused to provide any schedule information or commit to any delivery date for when it intended to satisfy the Purchase Orders, if at all.

38. OEG's failure to timely supply the steel materials as contracted constitutes a breach of the contract established by the Purchase Orders.

39. As a direct and proximate result of OEG's breaches, Valley has suffered financial harm and direct economic loss. Specifically, Valley has and will suffer loss as a result of the credits and payments that it has been forced to issue to its customers for the additional expenses incurred to replace the order of steel materials that OEG refused and failed to supply.

40. The losses that Valley has and will suffer as a result of the credits and payments charged by its customers currently amounts to approximately $643,950.18.

**SECOND CAUSE OF ACTION: BAD FAITH BREACH OF CONTRACT AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

41. Valley incorporates by reference the allegations set forth in Paragraphs 1 through 40.

42. Upon information and belief, and by virtue of OEG's conduct alleged herein, OEG not only breached the Purchase Orders but did so in bad faith due to the changing market conditions and OEG's preference for its preferred customers, which did not include Valley.

43. Upon information and believe, OEG knew before and/or at the time of agreeing to fulfill the Purchase Orders, and at all material times thereafter, that it would be unable to timely deliver the steel materials such that Valley could satisfy its deadlines and contracts with its customers. The cancellations by Valley's customers were therefore reasonably foreseeable as a consequence of OEG's failure to timely deliver.

44. When pressed for delivery of the steel materials, OEG attempted to renegotiate pricing and charge additional costs for delivery of the steel materials in contravention of the stated terms of the Purchase Orders, thereby seeking to extort additional funds for Valley to receive the steel materials and meet its deadlines. In fact, Valley paid the additional costs charged by OEG beyond the agreed price and terms on at least one of the Purchase Orders in order to receive timely delivery of the steel materials. Yet, OEG still refused to supply the steel materials as contracted.

45. Moreover, OEG continuously refused to offer any firm or specific schedule information on when it intended to deliver the order of materials, if at all, despite the agreed terms of the Purchase Orders and OEG's knowledge of the schedule and delivery dates for the projects.

46. In sum, upon information and belief, OEG agreed to the Purchase Orders knowing that it would not be able to satisfy the orders and/or timely deliver the steel materials. OEG accepted the Purchase Orders and charged sums to Valley while acting dishonestly and without any intention to timely supply the order of steel materials as contracted and in a manner that OEG knew or should have known was within the reasonable expectation of the parties.

47. The actions of OEG in entering into and breaching the Purchase Orders were undertaken in bad faith and constitute the intentional doing of a wrong for a dishonest or morally questionable motive to injure the rights of Valley to receive the benefits or reasonable expectations of the Purchase Orders. Stated differently, OEG never intended to fulfill its contractual promises

and never proceeded, in good faith, to perform. Instead, OEG cited a lack of raw materials despite the fact that at all pertinent times OEG had sufficient raw materials to begin processing the Valley orders.

48. In addition to committing bad faith breaches of the Purchase Orders, OEG also breached its duty of good faith and fair dealing to Valley.

49. Accordingly, OEG is liable to Valley for all damages resulting from its bad faith breaches of the Purchase Orders and from its breaches of the implied covenant of good faith and fair dealing, whether or not said damages were foreseeable.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT

50. Valley incorporates by reference the allegations set forth in Paragraphs 1 through 32.

51. The contract between OEG and Valley for the Nestlé Project is a valid, binding, and enforceable agreement between the parties for OEG to supply steel materials to Valley, free of rust, corrosion or other defects.

52. The Terms and Conditions of the Purchase Order between OEG and Valley require, *inter alia*, that OEG warrants that the goods supplied shall be free from defects and in conformity with the order, that Valley, at its option, may repair or replace any non-conforming goods, and further that OEG indemnify Valley from any and all losses resulting from defects in the goods supplied, or from OEG's negligence.

53. Valley fully performed and satisfied all of its obligations under the Purchase Order for the Nestlé Project and all other conditions precedent prior to filing suit.

54. Despite OEG's obligations contained in the Purchase Order, OEG failed to supply the steel materials as contracted.

55. OEG's failure to supply the steel materials as contracted, and, in particular, delivering materials with rust staining and corrosion, constitutes a breach of the contract established by the Purchase Order.

56. As a result of OEG's breach, Valley's customer required remedial work for which Valley has either been assessed or for which Valley provided at its sole cost.

## JURY DEMAND

57. Valley demands a jury trial on all issues triable by jury herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Valley Joist, LLC, prays for judgment against Defendant, OEG Building Materials, Inc., as follows:

a. For any and all damages incurred by Valley as a result of OEG's breach of contract, bad faith breach of contract, and/or breach of the implied covenant of good faith and fair dealing, in an amount to be proven at trial and expected to exceed $600,000;

b. Valley's reasonable attorneys' fees and related expenses, as provided for in contract;

c. Pre and post judgment interest from the earliest date, and at the highest rate, allowed by law;

d. All litigation costs allowed by law; and

e. All further relief as the Court deems just and proper and to which Valley may be justly entitled.

Dated: December 7, 2021

Respectfully submitted,

*s/Robert W. McAndrew*
MCANDREW VUOTTO, LLC
Robert W. McAndrew, Attorney of Record
Attorney ID: rm5310
13 Mt. Kemble Ave.
Morristown, NJ 07960
(973) 538-6308

JONES WALKER LLP
L. Etienne Balart
Louisiana State Bar No. 24951
*Seeking Admission Pro Hac Vice*
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: 504-582-8584
Facsimile: 504-589-8584
ebalart@joneswalker.com
**Attorneys for Plaintiff, Valley Joist, LLC**

**SERVICE INSTRUCTIONS:**

Service will be made on OEG Building Materials, Inc. pursuant to Rule 4 of the Federal Rules of Civil Procedure.

OEG Building Materials, Inc.
Through its Registered Agent of Service:
Oscar Rosner
1739 47th Street
Brooklyn, New York 11204