**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALLEY JOIST, LLC,<br><br>                  Plaintiff,<br>    v.<br><br>OEG BUILDING MATERIALS, LLC,<br><br>            Defendant. | Civ. A. No. 3:21-cv-20374 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Defendant OEG Building Materials, LLC's ("Defendant") Motion (*see* Mot., ECF No. 4), seeking dismissal of Plaintiff Valley Joist, LLC's ("Plaintiff") Complaint (*see* Compl., ECF No. 1) with prejudice. Plaintiff opposed (*see* Opp'n, ECF No. 9), and Defendant replied (*see* Reply, ECF No. 11). The Court has reviewed the parties' submissions, and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons stated herein, and for other good cause shown, Defendant's Motion is denied in-part, and granted in-part.

## I.    BACKGROUND

### A.    Factual Background[1]

This matter arises from a contract dispute between sophisticated business entities that are engaged in the procurement and provision of industrial materials. Plaintiff supplies the steel and

---

[1] When evaluating a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

other industrial materials manufactured and distributed by Defendant to its customers, which are businesses charged with the completion of commercial or residential construction projects.  (*See generally* Compl., ECF No. 1.)  Specifically, Plaintiff alleges the violation of two Purchase Orders, which form the basis for Plaintiff's first claim for breach of contract (*see id.* ¶¶ 33-40 (Count One), and the violation of contractual obligations on a third, unrelated project (*see id.* ¶¶ 50-56 (Count Three)).  Plaintiff does not state any allegations independently in support of its claim for breach of the duty of good faith and fair dealing (*see id.* ¶¶ 41-49 (Count Two)).

*The Waterfront Project*

The first Purchase Order revolves around Plaintiff's customer's underlying construction project, located at 615 Waterfront Drive, Allentown, Pennsylvania (hereinafter entitled the "Waterfront Project"), for which Plaintiff attempted to secure steel materials on the customer's behalf.  (*Id.* ¶ 7.)  Plaintiff requested its initial quote for the steel materials on January 7, 2021 (*see id.* ¶ 8), and then clarified in writing the necessity that the materials be delivered by mid-June 2021 (*see id.* ¶ 9).

On January 29, 2021, upon confirmation that its customer had officially been awarded the Project, Plaintiff issued a Purchase Order (the "Waterfront Purchase Order"), containing Plaintiff's standard terms and conditions, and securing delivery of the materials at Defendant's quoted price. (*See id.* ¶¶ 10-11.)   Plaintiff issued an attendant "Bill of Materials" detailing additional specifications of the steel materials required, providing the "schedule and sequences for the steel deck fabrication and construction on the Waterfront Project," and memorializing that delivery was scheduled to commence the week of June 14, 2021.  (*Id.* ¶ 12.)

Defendant notified Plaintiff that the Waterfront Purchase Order would expire prior to scheduled delivery, and of Defendant's contention that it "would need to 'reprice' the steel

materials for a June 2021 delivery." (*Id.* ¶ 13.) Plaintiff offered to accept early delivery instead, but Defendant claimed earlier delivery was impossible, and required Plaintiff "to pay additional costs in the amount of $159,626.00" to facilitate its customer's actual receipt of the steel materials already promised. (*Id.* ¶ 14.) Plaintiff contends that Defendant "unilaterally issu[ed] a new contract price due to market conditions that [Plaintiff] had to accept in order for [Plaintiff] to timely receive the steel materials and meet its own deadlines with its customer." (*Id.* ¶ 15.) Plaintiff agreed to pay the additional amount to ensure timely delivery. (*See id.* ¶ 16.)

Defendant then informed Plaintiff that its estimated delivery date had been delayed past the originally anticipated date in mid-June 2021, to the updated delivery window from the end of July through early August 2021. (*See id.*) By August 2021, Defendant had failed to supply the materials, had declined to estimate an anticipated delivery date, and finally refused to offer any concrete information regarding delivery of the materials subject to the Waterfront Purchase Order. (*See id.* ¶ 17.) As a result of Defendant's failure to perform, Plaintiff's customer cancelled its order with Plaintiff, incurred $423,950.18 in additional costs replacing the construction materials, and now seeks recovery from Plaintiff. (*Id.* ¶¶ 18-19.)

*The Atlanticare Project*

At the same time, in January 2021, Plaintiff also sought to obtain steel materials on behalf of a separate customer, in connection with that customer's project involving construction of the Atlanticare Medical Building in Atlantic City, New Jersey (hereinafter referenced as the "Atlanticare Project"), which required delivery of materials mid-summer 2021. (*Id.* ¶ 21, 23.) On January 15, 2021, Plaintiff memorialized its second Purchase Order for steel materials "based on [Defendant's] previous quote for the steel material units and freight[.]" (*Id.* ¶ 22.) Plaintiff then issued a Bill of Materials with further specifications, which provided a delivery date of July 19,

2021. (*See id.* ¶ 23.) As with the Waterfront Project, Defendant responded that a July 2021 delivery date was not possible, and "sought to charge [Plaintiff] additional costs in the amount of $98,400.00 to deliver the steel materials within an estimated time frame in September or October 2021." (*Id.* ¶ 24.)

Plaintiff contends that the additional costs demanded were the product of Defendant's exploitation of sudden market changes (*see id.*), and indeed, Plaintiff seems to allege that Defendant cherry-picked contracts to constructively cancel in order to favor its own priority customers (*see id.* ¶¶ 24-26, particularly ¶ 26 (alleging that Defendant "selectively 'canceled' [Plaintiff's] orders and had no intention of ever filling such orders in preference to [Defendant's] preferred customers, despite [Defendant's] purported renegotiation of the purchase orders")). Defendant's updated delivery projection date fell far enough outside of the project's schedule so as to require either that the customer cover, or fall behind on its original construction schedule. Understanding that Plaintiff, subject to a contract with its customer, and hopeful that it could still complete delivery to its customer on time, would be required to pay the additional costs or lose its customer to a competitor, Defendant levied additional fees and costs for the execution of the initial agreement. (*Id.* ¶ 27.) Defendant in fact failed to deliver the materials, and declined to provide an updated projection of a future delivery date. (*Id.* ¶¶ 25-26.)

As a result of Defendant's conduct, Plaintiff was unable to perform its obligation to deliver the steel materials to its customer. (*Id.* ¶ 27.) Moreover, Plaintiff "was unable to meet the schedule and deadlines on the Atlanticare Project[,] and was forced to cancel its contract with its customer," while the customer "was forced to purchase the  material from another company who was able to commit to the required delivery schedule." (*Id.*) Plaintiff, in turn, "was also forced to issue credits

and payments to its customer for the costs incurred to replace the order for steel materials, which credits and payments amount to approximately $220,000.00." (*Id.* ¶ 28.)

*The Nestlé Project*

In addition to the Waterfront and Atlanticare Projects, Plaintiff relies on a third, unrelated project as the basis for a different breach of contract claim. Plaintiff avers that "Defendant [] supplied galvanized roof decking materials on an unrelated job known as the Nestlé Project, for which [Plaintiff] has paid for all materials provided." (*Id.* ¶ 29.) The materials supplied by Defendant were deficient under the contract, which provided that they were to be in good order and condition, *i.e.*, free from rust staining and oxidation. (*Id.* ¶¶ 30-31.) Plaintiff was required "to remedy the unsatisfactory rusting and oxidation[,]" (*id.* ¶ 30), and Plaintiff has expended its own resources to remedy the defective materials delivered by Defendant (*see id.* ¶¶ 31-32). Plaintiff states that it performed on all of its obligations under the relevant Purchase Order (*see id.* ¶ 53), but that Defendant materially breached by delivering non-conforming materials (*see id.* ¶ 55). Plaintiff seeks redress for the cost of its remedial work on the Nestlé Project in compliance with its underlying obligations to its customer. (*See id.* ¶¶ 55-56.)

**B.    Procedural History**

Plaintiff filed its Complaint on December 7, 2021, advancing two separate claims for breach of contract (*see* Compl. ¶¶ 33-40, 50-56); and a third claim alleging "bad faith breach of contract" and breach of the duty of good faith and fair dealing (*see id.* ¶¶ 41-49).

On February 8, 2022, Defendant filed its Rule 12(b)(6) Motion to Dismiss in lieu of an answer (*see* Mot., ECF No. 4), including as exhibits a single page of the Waterfront and Atlanticare Purchase Orders (*see* Declaration of Jordan B. Kaplan, Esq. (the "Kaplan Decl.") Exs. A & B, ECF No. 4-3). On March 7, 2022, Plaintiff opposed (*see* Opp'n, ECF No. 9), providing extensive

supplementary rebuttal exhibits to those annexed by Defendant to its Motion (*see* Certification of John Hoffman (the "Hoffman Cert."), ECF No. 10).[2] Defendant filed its Reply on March 14, 2022. (*See* Reply, ECF No. 11.)

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state such a *prima facie* plausible claim in accord with the Federal Rules, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief,'" Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[,]'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated by Twombly*, 550 U.S. 544).  The reviewing district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F>3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

The Third Circuit has devised a three-step process to facilitate evaluation of a complaint's sufficiency.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675).  "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity

---

[2] Plaintiff filed apparently duplicate copies of its Hoffman Certification, the first as part of its Opposition (*see* Hoffman Cert., ECF No. 9-1), and the second as a separate document (*see* Hoffman Cert., ECF No. 10).  The Court references the later-filed document, as it is the most recent version.

and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). This divides the district court's analysis into three discrete segments: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.*

Typically, it is inappropriate for a reviewing court to consider extraneous documents—that is, documents not attached to the complaint, nor expressly incorporated therein—unless the court converts the motion to dismiss into a motion for summary judgment, *see Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing Rule 12(b)(6)). However, the Court must analyze the complaint "in its entirety," including "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 & Supp. 2007)). Additionally, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (collecting cases). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984), *cert. denied*, 469 U.S. 831). Finally, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III.   **DISCUSSION**

As a predicate matter, the Court notes that consideration of Plaintiff's factual submissions evidencing the email correspondence between the parties, the correspondence between Plaintiff and its customers, and subsequent correspondence of counsel is inappropriate at this stage. *Tellabs, Inc.*, 551 U.S. at 322.  The Court will, however, consider the documents incorporated by reference and integral to the pleading.

In this case, Plaintiff does not attach any documentation to its Complaint.  (*See generally* Compl.)  To its Motion, Defendant attaches the central Purchase Orders: one bearing the title "615 Waterfront," and dated January 29, 2021, which purports to purchase specific materials in exchange for $179,338.45, and the other marked "Purchase Order 0A02873," dated January 15, 2021, and appearing to promise payment of $57,587.00 for the specified steel materials.  (*See* Purchase Orders, Kaplan Decl. Exs. A & B.)   Plaintiff responds with further evidentiary documentation, including what Plaintiff advances as Plaintiff's "standard Terms and Conditions of purchase which are issued with purchase orders."  (*See* Hoffman Cert. ¶ 7; *see also* Hoffman Cert. Ex. 1-A.)  The Court will consider only the Purchase Orders attached by Defendant, and Plaintiff's statement of its Terms and Conditions ("T&C"),[3] as those documents are referenced within and essential to Plaintiff's Complaint.  (*See* Compl. ¶¶ 11, 22.)

In its Motion, Defendant pursues dismissal of Plaintiff's first and third claims with prejudice, arguing that Plaintiff's Complaint contains insufficient facts "to plausibly allege that [Defendant] breached any express or implied term in the Purchase[] Orders or any other contract."

---

[3] According to Plaintiff's employee representative, "[o]ver the years, [Plaintiff] and [Defendant] have done numerous orders and projects and have a historical course of dealing."  (*See* Hoffman Cert. ¶ 6.)  "That course of dealing included issuing standard Terms and Conditions of purchase which are issued with purchase orders, a copy of which is attached hereto as Exhibit 1-A."  (*Id.* ¶ 7 (citing T&C, Hoffman Cert Ex. 1-A).)

(*See* Def.'s Moving Br. 9, ECF No. 4-2.)  Defendant also contends that Plaintiff's claim for breach of the covenant of good faith and fair dealing must be dismissed as duplicative of Plaintiff's breach of contract claims, and that dismissal with prejudice is appropriate because amendment would be futile.  (*See id.* at 13-15.)  The Court will address Defendant's arguments in turn.

### A.   Breach of Contract

To state a claim for breach of contract under New Jersey law, the plaintiff must adequately allege:

> [F]irst, that the parties entered into a contract containing certain terms; second, that [the] plaintiffs did what the contract required them to do; third, that [the] defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that the defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting Model Jury Charge (Civil), § 4.10A "The Contract Claim-Generally" (May 1998)) (internal punctuation marks omitted); *see Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) ("To state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.").  "The plaintiff must also specifically identify portions of the contract that were allegedly breached."  *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) (quoting *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012)).  Furthermore, "a contract may bind a party to the terms of another, explicitly referenced document if 'the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'"  *Brandywine Pro. Servs., LLC, v. Quigley*,

No. 13-2865, 2015 WL 6598537, at *4 (E.D. Pa. Oct. 30, 2015) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n.10 (3d Cir. 2003)).

### 1.    The Waterfront and Atlanticare Purchase Orders

Defendant's central argument for dismissal of Plaintiff's first claim relies on Plaintiff's assertion that the Purchase Orders contain terms designating that "time is of the essence." (*See* Def.'s Moving Br. 10-11; *see also* Compl. ¶ 35.) Defendant contends that Plaintiff "fails to plausibly allege claims for breach of contract because the subject purchase orders do not contain any 'time is of the essence' clause or agreement by [Defendant] to deliver steel by a specific date." (*Id.* at 11 (citing Compl. ¶ 35 & Kaplan Decl. Exs. A, B).) Plaintiff opposes, stating that its Complaint contains numerous allegations that "both parties understood in their contractual undertaking that time was indeed 'of the essence.'" (Pl.'s Opp'n Br. 11, ECF No. 9.) Defendant replies that Plaintiff has failed to show a meeting of the minds as to a delivery date, an essential term under Plaintiff's purported contracts. (*See* Def.'s Reply Br. 6-7, ECF No. 11.) Defendant states that "[t]he undisputed proof demonstrates that, over the course of several months, [Plaintiff] unsuccessfully pushed to have [Defendant] commit to a specific delivery date, which [Defendant] never agreed to do[,]" (*id.* at 8), and therefore Plaintiff's claim that Defendant's failure to deliver constituted material breach is untenable (*id.*).

Here, Plaintiff has adequately stated its claim for breach of the Waterfront and Atlanticare Purchase Orders. Plaintiff states that it issued Purchase Orders for the sale of commercial materials to Defendant, and with it included its standard T&C. (*See* Compl. ¶¶ 11, 22; *see also* Def.'s Moving Br. 9 n.5.) Plaintiff states the existence of a contract, claiming that "[i]n early 2021, [Plaintiff] placed two, independent purchase orders for steel and related materials [] with [Defendant], which [Defendant] confirmed and accepted." (Compl. ¶ 6; *see id.* ¶¶ 10, 21 (alleging

acceptance of Defendant's offer, respectively); *see also* T&C ¶ 1, Hoffman Cert. Ex. 1-A ("Supplier automatically accepts [Plaintiff's] terms and conditions of purchase by express acceptance or by shipment of the goods.").) Plaintiff avers that the Purchase Orders "are valid, binding, and enforceable agreements between the parties for [Defendant] to timely supply steel materials to [Plaintiff]," and that "[t]he [T&C] of the Purchase Orders expressly state that '[t]ime is of the essence' for the order of materials." (Compl. ¶¶ 34-35.) A cursory investigation of Plaintiff's T&C reveals that the document in fact contains a provision that time is of the essence, to wit:

> Time is of the essence in any order. In addition to its remedies for breach of contract, Buyer [Plaintiff] reserves the right to return any or all goods in unopened original packing to Supplier or cancel an order if the goods are not delivered to Buyer [Plaintiff] more than five (5) days after the delivery date shown in shipping instructions. If the delivery date shown in shipping instructions is revised by Buyer [Plaintiff] by notification to Supplier [Defendant], then such five (5) day period shall not commence to run until such revised delivery date.

(Time is of the Essence, T&C ¶ 6, Hoffman Cert. Ex. 1-A.) Though not necessarily proof positive that Plaintiff remitted this specific T&C to Defendant in conjunction with the respective Purchase Orders, Plaintiff's showing is enough to rebut Defendant's assertions that the Purchase Orders were single-page stand-alone instruments, and were not subject to a clause dictating the essential nature of timeliness in performance of stated obligations. As to the meeting of the minds, the Court finds that this element is adequately pled. (*See, e.g.*, Compl. ¶ 12 (claiming June 14, 2021 delivery date stated in Bill of Materials) & ¶ 23 (alleging Atlanticare Project delivery date stated as July 19, 2021 in Bill of Materials).) In sum, Plaintiff has sufficiently alleged that its acceptance of Defendant's offer, *i.e.*, its execution of these Purchase Orders in response to Defendant's quote, serves as the basis for contract formation. *See Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284

(N.J. 1992) (quoting *West Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)) ("A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'").

In addition, Plaintiff adequately alleges that Defendant's failure to supply the steel materials constitutes material breach (*see, e.g.*, Compl. ¶¶ 17, 24), explaining that "[d]espite [Defendant's] agreement to comply with the terms of the Purchase Orders, [Defendant] ultimately refused to supply the steel materials as contracted and continuously refused to provide any schedule information or commit to any delivery date for when it intended to satisfy the Purchase Orders" (*id.* ¶ 37). Plaintiff claims that "[a]s a direct and proximate result of Defendant's breaches, [Plaintiff] has suffered financial harm and direct economic loss" (*see id.* ¶¶ 39; *see also* ¶¶ 19, 28 (providing additional costs incurred by customers and itself in attempts cover Defendant's failure)). Specifically, Plaintiff claims "loss as a result of the credits and payments that it has been forced to issue to its customers for the additional expenses incurred to replace the order of steel materials that [Defendant] refused and failed to supply." (*Id.* ¶ 39.) Lastly, Plaintiff alleges that it is in compliance with its contractual obligations. (*Id.* ¶ 36 ("[Plaintiff] fully performed and satisfied all of its obligations under the Purchase Orders and all other conditions precedent prior to filing suit, excluding those obligations for which [Plaintiff's] performance was excused.").)

At this stage, Plaintiff has alleged sufficient facts to survive Defendant's 12(b)(6) motion.

### 2.    Obligations Relating to Nestlé Project

Defendant next argues that Plaintiff's Count Three must be dismissed because Plaintiff fails to establish that Defendant is a party to a valid contract with Plaintiff in relation to the Nestlé Project. (Def.'s Moving Br. 11-12.) Plaintiff responds that it has "specifically [pled] the existence of a contract between it and [Defendant][,]" (Pl.'s Opp'n Br. 18 (citing Compl. ¶ 51)), and that it

further "goes on to allege the warranty provisions in that contract" (*id.* (citing Compl. ¶ 52)). Defendant replies that these statements are not enough, arguing that "nothing in [Plaintiff's] Complaint states (i) the period of time upon which the parties entered an agreement; (ii) the location to which steel products were to be delivered; or (iii) whether [Defendant] entered into an actual agreement *with* [*Plaintiff*]." (Def.'s Reply Br. 9 (emphasis in original).)

In an action for garden-variety breach of contract, Plaintiff is not required to plead with such specificity.  In the broader context of the Nestlé Project, Plaintiff has pled the existence of a "valid, binding, and enforceable agreement between the parties for [Defendant] to supply steel materials to [Plaintiff], free of rust, corrosion or other defects." (Compl. ¶ 51.)  Plaintiff claims that Defendant's delivery of nonconforming goods constitutes a material breach of the T&C. (*Id.* ¶ 55.)  Plaintiff claims that it has performed its obligations pursuant to the Purchase Order for the Nestlé Project (*id.* ¶ 53), but that Defendant's "failure to supply the steel materials as contracted, and, in particular, [Defendant's] deliver[y of] materials with rust staining and corrosion, constitutes a breach of the contract established by the Purchase Order" (*id.* ¶¶ 54-55).  Finally, Plaintiff alleges that it suffered harm as a result of Defendant's alleged breach, explaining that "as a result of [Defendant's] breach, [Plaintiff's] customer required remedial work for which [Plaintiff] has either been assessed or for which [Plaintiff] provided at its sole cost" (*id.* ¶ 56), and that Plaintiff "has expended sums to remedy the defective materials provided by [Defendant] for the Nestlé Project" (*id.* ¶ 32).  For these reasons, Plaintiff has also adequately stated a claim for breach of contract pursuant to the Nestlé Project's Purchase Order.

### B.     Breach of Covenant of Good Faith & Fair Dealing

Defendant argues that "[Plaintiff's] claim for Breach of Contract (Count I) is, in all respects, identical to its claim for Breach of the Covenant of Good Faith and Fair Dealing," arguing

that the redundancy of the claims is demonstrated by Plaintiff's pursuit of "the exact same damages in Count II as it seeks in Count I." (Def.'s Moving Br. 15 (citing Compl. ¶¶ 47, 49).) Plaintiff responds that its breach of contract claims arise from the "failure to timely deliver steel," and that its breach of the covenant to engage in fair dealing arises from Defendant's alleged deception, or stated differently, from the allegation that Defended did not intend to perform its obligations when entering into the contract. (Pl.'s Opp'n Br. 15.) Additionally, Plaintiff states that "the allegations in the Complaint very clearly set out a calculated and intentional course of conduct by [Defendant], that, assuming to be true, state a plausible claim" beyond the claims for breach of contract. (*Id.* at 16.) Specifically, Plaintiff maintains that Defendant "intentionally misled [Plaintiff] and [Plaintiff] relied upon those representations[,]" (*id.*); that Defendant prioritized delivery to its own customers, while claiming lack of available raw materials, (*id.* at 15); and that Defendant's "intentions with respect to charging higher pricing, refusing to provide estimated delivery schedules and failure to begin any production on [Plaintiff's] orders," all "involve bad motive or intention" beyond that of failure to perform obligations under the contract (*id.* at 16-17). To Defendant's duplicative damages argument, Plaintiff argues that "the same damages [can] form two, distinct courses of action." (*Id.* at 17.)

Within every contract formed under New Jersey law inheres the implied covenant of good faith and fair dealing, *see Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (collecting cases), meaning that "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *see Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965) (internal citations omitted). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,

864 A.2d 387, 396 (N.J. 2005) (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (D.N.J. 2001)).

"A breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unltd., LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261 (N.J. 2002)); *see also Cedar Holdings, LLC v. Menashe*, No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017) (collecting cases) ("[A] plaintiff may not pursue a claim for a breach of the implied covenant of good faith and fair dealing if the claim is duplicative of the plaintiff's breach of contract claim."). Stated differently, "when a party breaches a duty set forth explicitly in a contract, the remedy exists pursuant to those express terms, and not pursuant to some implied obligation arising out of the contract." *Id.* (citing *Wade*, 798 A.2d at 1261); *see also Comprehensive Neurosurgical, P.C. v. Valley Hosp.*, No. A-2866-19, 2022 WL 3152592, at *14 (N.J. Super. Ct. App. Div. Aug. 8, 2022) (citing *Wade*, 798 A.2d at 1261) (The implied duty "does not provide a plaintiff with additional damages for the breach of an express term of a contract."). "A claim for breach of the implied covenant is duplicative of a breach of contract claim when allegations of bad faith all relate to actions that form the basis of the breach of contract claim." *Menashe*, 2017 WL 1349321, at *3 (citing *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016)). "The covenant is to be construed narrowly and utilized only when gaps exist as to the parties' intentions." *TBI Unltd., LLC*, 2013 WL 6048720, at *3 (citing *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010)).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing arises out of the same conduct as its breach of contract claims. Specifically, Plaintiff's allegations that

Defendant engaged in bad faith all relate to and arise from the underlying allegations that establish the basis for Plaintiff's breach of contract claims. (*See* Compl. ¶¶ 42-47 (alleging bad faith breach of subject Purchase Orders under claims one and three for breach of contract).) Additionally, as Defendant emphasizes, (*see* Def.'s Moving Br. 15), Plaintiff's assertion of damages for Defendant's breach of the covenant bears substantial overlap with Plaintiff's statement of damages for Defendant's alleged breach of the Purchase Orders (*compare* Compl. ¶ 49 (claiming that Defendant "is liable to [Plaintiff] for all damages resulting from its bad faith breaches of the Purchase Orders") *with id.* ¶ 38 (claiming that Defendant's "failure to timely supply the steel materials as contracted constitutes a breach of the contract established by the Purchase Orders")). Because Plaintiff's claim for breach of the covenant of good faith and fair dealing is duplicative of its breach of contract claims, particularly of its first claim, the claim must be dismissed.

IV.     **CONCLUSION**

For the reasons explained herein, and for other good cause shown, Defendant's Motion to Dismiss is denied as to Plaintiff's breach of contract claims (*see* Compl. ¶¶ 33-40 (Count I) & *id.* ¶¶ 50-56 (Count III), respectively). Defendant's Motion to dismiss Plaintiff's second claim is granted, and Plaintiff's claim for breach of the covenant of good faith and fair dealing will therefore be dismissed. (*See* Compl. ¶¶ 41-49 (Count II).) An appropriate Order follows.

February **27**, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE